OPINION
{¶ 1} Defendant-appellant, Auto-Owners Insurance Company, appeals the decision of the Fayette County Court of Common Pleas denying appellant's request for setoff and finding plaintiff-appellee, Carol Disbennet, entitled to collect underinsured motorist benefits and prejudgment interest. We affirm the decision of the trial court.
 {¶ 2} On November 4, 1997, Rusty Disbennet, appellee's husband, was working for his employer, Mark Kitsmiller d.b.a. Contract Surveying Services. Rusty was transported to State Route 734 and Darbyshire Drive in Fayette County in his employer's vehicle. The vehicle was parked on Darbyshire Drive, 50 feet north of State Route 734. Rusty removed equipment from the truck and began performing surveying work in the middle of the road, surrounded by four traffic cones. While he was working in the road, Rusty was struck by a vehicle driven by Raymond Yocum. As a result, Rusty suffered fatal injuries. The parties stipulated that the Contract Surveying Services vehicle was approximately 80 feet northeast of the accident location.
 {¶ 3} Appellee sought to collect underinsured motorist ("UIM") benefits from the commercial automobile insurance policy issued by appellant to Kitsmiller d.b.a. Contract Surveying Services. On June 15, 2001, the trial court issued an interlocutory order denying appellant's motion for summary judgment and granting appellee's motion for summary judgment with respect to "the policy of insurance issued by Auto Owner's to Rusty Disbennet's employer Mark Kitsmiller, d.b.a. Contract Surveying Services." The trial court concluded that "as a matter of law, Auto Owner's policy provides UIM coverage to Plaintiff and Plaintiff's decedent." The trial court also determined that Rusty was "entitled to UM/UIM coverage under the policy" because the "language defining the term `insured' can reasonably be interpreted to provide UM/UIM coverage to Rusty Disbennet at the time of the accident."
 {¶ 4} The case proceeded to trial and the jury returned a verdict for appellee in the amount of $425,000. Prior to trial, appellee reached a settlement with the torfeasor, Yocum, for the full liability limit of $100,000 under his insurance policy with State Auto Insurance Company. The parties agreed that appellant was entitled to a setoff for these proceeds.
 {¶ 5} Prior to trial, appellee also reached a settlement with her personal underinsured motorist carrier, Utica National Insurance Company a.k.a. Republic Franklin Insurance Company, for $170,000 of the remaining $200,000 in UIM coverage under the policy. However, the parties did not agree that appellant was entitled to a setoff for these proceeds.
 {¶ 6} Subsequently, the trial court held that appellant was not entitled to a setoff for those proceeds paid by appellee's personal UIM carrier. The trial court also held that appellee was entitled to prejudgment interest from the date of the accident. Appellant appeals the decision raising three assignments of error.
Assignment of Error No. 1
 {¶ 7} "The lower court erred in its June 15, 2001 entry by finding appellee was entitled to collect underinsured motorist benefits under the commercial automobile insurance policy issued to Mark Kitsmiller D.B.A. Contract Surveying Services by auto-owners insurance company in light of the fact that Randy [sic] Disbennet was not an "insured" under the policy issued to his employer."
 {¶ 8} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. American Indus. Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511, 1994-Ohio-172. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505.
 {¶ 9} In the present case, the trial court found that "as a matter of law, Auto Owner's policy provides UIM coverage to Plaintiff and Plaintiff's decedent." The trial court also determined that under the terms of the policy, Rusty is "entitled to UM/UIM coverage under the policy" because the "language defining the term `insured' can reasonably be interpreted to provide UM/UIM coverage to Rusty Disbennet at the time of the accident."
 {¶ 10} In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons "occupying" insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of the accident should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area. Joins v. Bonner (1986), 28 Ohio St.3d 398,401.
 {¶ 11} Rusty was transported in his employer's vehicle to the work site. The vehicle was parked nearby and Rusty removed equipment from the truck before performing surveying work in the middle of the road, surrounded by four traffic cones. While he was working in middle of the road he was struck by a vehicle. Rusty suffered fatal injuries. The employer's vehicle was approximately 80 feet northeast of the accident location.
 {¶ 12} In a similar case, a vehicle struck a highway crew worker after he exited the vehicle he was occupying to replace a broken reflector lenses in the dividing line. See Yoerger v. Gen. Acc. Ins. Co.of Am. (1994), 98 Ohio App.3d 505, 508. The trial court found that the worker "was engaged in an activity that was foreseeably identifiable with the use of the insured vehicle, and was therefore related to the insured vehicle." Id. However, the trial court "failed to articulate any finding" on the issue of the crewman's proximity to the truck. Id. at 509. Therefore, the case was remanded for the trial court to determine if the crewman was within a reasonable geographic distance to the insured vehicle. Id.
 {¶ 13} In an additional similar case, a surveyor, while standing in the middle of a two lane road, "on the broken yellow line * * * performing his employer's business with a handheld radio, a surveyor's transit mounted on a tripod and surrounded by four orange cones, was struck by a motor vehicle." See Norris v. Allstate Ins. Co. (Dec. 19, 1996), Cuyahoga App. No. 70591, at *1. The evidence demonstrated that the surveyor was "thirty-two feet from the van at the time of the accident." Id. at *3. The court determined that, "as a matter of law, a vehicle passenger * * * who was 100-110 feet from the insured vehicle at the time of being struck by oncoming traffic had a reasonable relationship with the insured vehicle and was within a reasonable geographic distance to the insured vehicle." Id., citing State Farm Mutual Automobile Ins. Co.v. Cincinnati Ins. Co. (June 17, 1993), Cuyahoga App. No. 62930.
 {¶ 14} In State Farm, two cases of pop in two liter plastic bottles fell from a truck. The driver "pulled the truck up on the berm and [the passenger] exited the passenger side of the truck and walked back 100-110 feet to retrieve the pop and place it back on the truck." Id. at *1. A passing vehicle struck the passenger. The court found that the passenger who was 100-110 feet from the insured vehicle "was occupying [the truck] for uninsured motorist's coverage purposes." Id. at *5.
 {¶ 15} Reasonable geographic distance is not measured as a matter of law in feet. It is a determination made upon the activity and the relation of the performance of that activity at the time of the injury. The measure of feet is only one factor to be considered when determining whether the issue is a question of fact for the jury or may be determined as a matter of law.
 {¶ 16} The evidence demonstrated that Rusty was approximately 80 feet from the employer's vehicle at the time of the accident. Upon reviewing the evidence, we find that the facts of this case are sufficiently similar to the facts of Norris to determine that reasonable minds can only conclude that Rusty was within a reasonable geographic distance to the insured vehicle and that he was engaged in an activity that was foreseeably identifiable with the use of the insured vehicle at the time of the accident. Therefore, appellee is entitled to UM/UIM coverage under the policy issued by appellant to Kitsmiller d.b.a. Contract Surveying Services. Consequently, the first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 17} "The lower court erred in its March 28, 2002 judgment entry by denying appellant's request for a setoff for those settlement proceeds paid by appellee's personal underinsured motorist carrier which served as primary coverage."
 {¶ 18} The interpretation of a contract that is clear and unambiguous is a question of law. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511, 1994-Ohio-172. Questions of law are reviewed by this court de novo. Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52. The UM/UIM endorsement respecting setoff in the policy appellant issued to Kitsmiller d.b.a. Contract Surveying Services states: "[t]he limit of liability expressed in the Declarations * * * shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 19} Appellant was permitted a setoff of $100,000, the policy limit of the tortfeasor, Raymond Yocum. This is appropriate because Yocum, as the tortfeasor, is a "person" who is "liable to the insured." Appellant argues that "by the plain terms of the policy language," appellant should also receive a setoff of up to $300,000 for any settlement funds from appellee's personal underinsured motorist carrier.
 {¶ 20} However, based on "the plain terms of the policy language," appellee's personal underinsured motorist carrier is not a policy "covering persons liable to the insured." The terms of the policy must be construed strictly against the insurer and liberally in favor of the insured because the insurer drafted the policy. See Buckeye Union Ins.Co. v. Price (1974), 39 Ohio St.2d 95, 98; King v. Nationwide Ins. Co.
(1988), 35 Ohio St.3d 208, 211. Therefore, appellant is not entitled to setoff of the amounts payable under appellee's policy. Consequently, the second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 21} "The lower court erred in its March 28, 2002 judgment entry in granting appellee an award of prejudgment interest from the date of the accident in light of this court's prior decision in Miller v.Gunckle (Dec. 11, 2002), Butler App. No. CA2000-02-026 Ohio App.Lexis 5775, unreported."
 {¶ 22} Appellant argues that the trial court "disregarded the binding authority from the Twelfth District which specifically held that Appellee is not entitled to prejudgment interest from the date of the accident." Furthermore, appellant argues that appellee is not entitled to prejudgment interest at all.
 {¶ 23} The decision to award or deny prejudgment interest is within the discretion of the trial court. Cox v. Oliver Machinery Co.
(1987), 41 Ohio App.3d 28, 37. An appellate court's review of a trial court's award or denial of prejudgment interest is governed by an abuse of discretion standard. Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339,342, 1998-Ohio-387. An abuse of discretion connotes more than an error of law or judgment; in order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. See Hart v.American Guarantee and Liability Ins. Co., Tuscarawas App. No. 2001AP100094, at *2, 2002-Ohio-3676, citing, Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. In order to have an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984), 15 Ohio St.3d 164,222.
 {¶ 24} Appellant maintains that appellee's settlement demand before trial was $300,000. Appellant argues that as appellee had $300,000 available in insurance coverage, $100,000 from the tortfeasor's liability policy and $200,000 from appellee's personal UIM policy, appellant's obligation did not become due and payable until the jury reached a verdict that exceeded $300,000. For this reason, appellant argues that appellee "was not deprived by Auto-Owners of any UIM proceeds and prejudgment interest is not warranted in this case."
 {¶ 25} However, appellant is not entitled to setoff for appellee's personal UIM policy. Furthermore, insurance companies are "subject to a prejudgment interest award, not as a punishment but as a way to prevent them from using money then due and payable to another for their own financial gain." See Zurcher ex rel v. National Surety Corp., Stark App. No. 2001CA00197, 2002-Ohio-901, at ¶ 46. The trial court's attitude in awarding prejudgment interest to appellee was not unreasonable, arbitrary, or unconscionable. Therefore, appellee is entitled to prejudgment interest.
 {¶ 26} Appellant also argues that the trial court erred in granting prejudgment interest from the date of the accident based uponMiller v. Gunckle (Dec. 11, 2002), Butler App. No. CA2000-02-026. This court held in Miller v. Gunckle that the "accrual date for computation of prejudgment interest * * * starts on the date the insured makes a UMI claim under his policy against his insurer after having exhausted the tort-feasor's coverage."[1]
 {¶ 27} However, the decision of when to begin calculation of prejudgment interest is within the discretion of the trial court. SeeLandis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 342, 1998-Ohio-387. The trial court stated in its entry that "[a]lthough the Court is mindful of the case of Miller v. Gunckle, * * * the Court believes that the eventual resolution of the Landis case provides the appropriate resolution of the issue."
 {¶ 28} The parties in Landis "stipulated that [the insurance carrier's] denial of coverage was not a bad faith act." Landis v. Grange
(Ohio Comm.Pl. 1999), 100 Ohio Misc.2d 31, 34. On remand, the trial court in Landis determined that the appropriate point to begin accrual of prejudgment interest was "the date of the accident." Id. The trial court determined this point was appropriate because "[w]here there is no question as to the liability * * * the contractual obligation to pay is fixed as of the date of the accident." Id. at 35.
 {¶ 29} In the instant matter, the trial court's attitude in awarding prejudgment interest to appellee from the date of the accident was not unreasonable, arbitrary, or unconscionable. Therefore, the third assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] The Supreme Court of Ohio has rendered a decision overruling Millerv. Gunckle. See Miller v. Gunckle, 96 Ohio St.3d 359, 2002-Ohio-4932. In that decision, the Supreme Court held that the "right to interest, the date from which interest should accrue, and the rate of interest involved questions of law and fact properly left to the discretion" of the trier of fact. Id. at ¶ 19.