HAWKINS v ALLSTATE INSURANCE COMPANY

Docket No. 65392. Submitted December 13, 1983, at Detroit.—Decided
March 5, 1984. Leave to appeal applied for.

Plaintiff Marlene Hawkins was a passenger in a Pontiac automo-
bile driven by Edward Copley and insured by Allstate Insur-
ance Company. The Pontiac struck another automobile insured
by American Fidelity Insurance Company. Shortly after exiting
from their vehicle, Hawkins and Copley were struck by an
uninsured vehicle driven by Kate Williams. Williams fled the
scene of the accident, dragging Hawkins under the car for over
one-half of a mile. Hawkins sought no-fault insurance benefits
from Allstate and American Fidelity and was denied benefits
by both companies. Hawkins then applied to the State of
Michigan for no-fault assigned claims benefits. The claim was
assigned to Aetna Casualty & Surety Company. Aetna paid
weekly benefits to Hawkins, but refused to pay her medical
expenses. Hawkins filed suit in Wayne Circuit Court against
Allstate, American Fidelity, and Aetna, seeking payment of her
medical expenses. The Attorney General and Department of
Social Services intervened as plaintiffs. They alleged that Haw-
kins' medical bills had been paid by Medicaid. The court,
Charles S. Farmer, J., granted a partial summary judgment on
the issue of coverage in favor of the plaintiffs and defendant
Aetna against Allstate, and granted a partial summary judg-
ment of no cause of action for American Fidelity and Aetna as
to Hawkins' claims. Allstate appealed, alleging that (1) the trial
court erred in holding that Hawkins was an occupant of the
Pontiac at the time of the second accident and (2) there is no
causal connection between Hawkins' injuries and the owner-
ship, maintenance, or use of the Pontiac. *Held:*

1. The trial court did not err in finding that Hawkins was an
occupant of the Pontiac at the time of the second accident for

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 129 *et seq.,* 340 *et seq.*
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.
What constitutes a "motor vehicle" covered under no fault insur-
ance. 60 ALR3d 651.

purposes of the section of the no-fault act which allows recovery for injuries received while occupying, entering into, or alighting from a parked vehicle.

2. There was a sufficient causal connection between Hawkins' injuries and the ownership, maintenance, and use of the Pontiac. An injury received from a third vehicle after alighting from an insured vehicle which has been involved in an accident is foreseeably identifiable with the ownership, maintenance, or use of a motor vehicle.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLES.

A two-tier analysis is used to determine whether accidental bodily injury arises out of the ownership, operation, maintenance, or use of a parked motor vehicle under the no-fault insurance act: first, does the injury fit within one of the exceptions delineated in the act, and, second, is there a causal connection between the injury incurred and the ownership, operation, maintenance, or use of the motor vehicle (MCL 500.3106; MSA 24.13106).

2. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLES.

A person injured as a result of being struck by a passing automobile while standing outside of his automobile for purposes of exchanging identification and accident information with another driver involved in a prior accident falls within the section of the no-fault automobile insurance act allowing recovery of benefits for persons injured while occupying, entering into, or alighting from a parked vehicle (MCL 500.3106[c]; MSA 24.13106[c]).

3. INSURANCE — NO-FAULT INSURANCE — INJURIES — CAUSAL RELATIONSHIP.

There must be a causal connection between the injury sustained and the ownership, maintenance, or use of the automobile to create a claim under the terms of a no-fault automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance, or use of an automobile; the causal connection must be more than incidental, fortuitous, or but for and the injury must be foreseeably identifiable with the normal use, maintenance, and ownership of the vehicle.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin*), for Allstate Insurance Company.

*Dennis J. Simon & Associates, P.C.* (by *Taras P. Jarema*), for American Fidelity Insurance Company.

*Collins, Einhorn & Farrell, P.C.* (by *Dale J. McLellan* and *Noreen L. Slank*), for Aetna Casualty & Surety Company.

Before: DANHOF, C.J., and ALLEN and M. E. DODGE,* JJ.

PER CURIAM. Plaintiff Marlene Hawkins was a passenger in a Pontiac driven on February 8, 1976, by Edward Copley and insured by defendant-appellant Allstate Insurance Company. Copley's Pontiac struck a Rambler owned and operated by Osie Moore and insured by defendant-appellee American Fidelity Insurance Company. Soon after this collision, Marlene Hawkins and Edward Copley, who had exited from the Pontiac, were struck by a third vehicle, an uninsured Dodge driven by Kate Williams. The Dodge also struck the Rambler. Williams fled the scene of the accident, dragging Ms. Hawkins under the car for six-tenths of a mile and severely injuring her.

Hawkins sought no-fault benefits from Allstate and from American Fidelity and was denied benefits by each company. She then made application to the State of Michigan for no-fault assigned claims plan benefits and the claim was assigned to defendant-appellee Aetna Casualty & Surety Company. Aetna paid plaintiff weekly benefits, but refused to pay plaintiff's medical expenses. Hawkins thereupon filed the instant action against all three defendants, seeking payment of her medical expenses. The motion to intervene by Attorney General Frank J. Kelley and the Michigan Depart-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment of Social Services was granted by the trial court because the motion alleged that plaintiff's medical bills had been paid by Medicaid.

After a bench trial, the trial court found that Hawkins was an "occupant" of the Pontiac at the time of the second accident. The trial court issued a partial summary judgment on the issue of coverage in favor of plaintiffs and defendant Aetna against Allstate. A partial summary judgment of no cause of action was entered on behalf of American Fidelity and Aetna as to Hawkins' claims. The final judgment was entered on June 11, 1982, fixing the amount of damages. It is from this judgment that Allstate appeals.

On appeal, Allstate argues that the trial court erred in holding that Hawkins was an occupant of the Pontiac at the time of the second accident. We follow the Supreme Court's analysis in *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975), and hold that the trial court correctly found her to be an occupant of the Pontiac at the time of the second accident.

MCL 500.3106; MSA 24.13106 governs insurance liability under the no-fault act where parked vehicles are involved in an accident:

"(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

"(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) Except as provided in subsection (2) for an injury

sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle."

A two-tier analysis is generally applicable to § 3106 situations: first, the plaintiff must fall within one of the § 3106 exceptions and, second, a causal connection between the injuries sustained and the ownership, maintenance, or use of the motor vehicle must be found. *Teman v Trans-America Ins Co of Michigan,* 123 Mich App 262; 333 NW2d 244 (1983); *Dowdy v Motorland Ins Co,* 97 Mich App 242; 293 NW2d 782 (1980).

Section 3106(c) looks to whether the injured person was "occupying, entering into, or alighting from the vehicle". In *Nickerson, supra,* a pre-no-fault action, the Supreme Court refused to require that there be "physical contact" before an individual could be found to be occupying the motor vehicle. The plaintiff in *Nickerson* had, like the instant plaintiff, been a passenger in the insured vehicle immediately prior to his injuries by an uninsured motorist. We find the court's analysis in *Nickerson* to be equally applicable to the present case. Plaintiff herein was found by the trial court to have left the Allstate insured vehicle three to five minutes prior to the second collision for the purpose of exchanging identification and accident information with the other driver involved in the first collision. This finding is well supported by the record and indicates plaintiff's immediate prior occupancy of the vehicle. We agree with the trial court that plaintiff's injury falls within the exception listed in § 3106(c).

The remaining issue is whether a causal connection exists between the injury and the ownership, maintenance, or use of the motor vehicle. We

believe that this question must be answered in the affirmative in this case. The requisite causal connection was described by this Court in *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), *lv den* 395 Mich 787 (1975):

"In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle."

The trial court found that:

"Also, plaintiff did not engage in any conduct other than the necessary and compelling activity of exchanging personal information regarding her injuries, etc., from the first accident, nor did she delay, deviate or commit any acts that were not reasonably incident under similar circumstances."

We believe that an injury from a third vehicle after alighting from an insured vehicle which has been involved in an accident is "foreseeably identifiable" with the ownership, maintenance, or use of a motor vehicle.

Affirmed. Costs to plaintiff.