AUTO-OWNERS INSURANCE COMPANY v BOISSONNEAULT

Docket No. 113883. Submitted December 14, 1989, at Lansing. Decided February 20, 1990. Leave to appeal applied for.

Christopher Boissonneault sustained fatal injuries while riding as a passenger of a motorist who was drag racing with another motorist. The driver of the automobile in which Boissonneault was a passenger was insured under a no-fault policy with liability limits of $20,000 per person and $40,000 per occurrence for bodily injury. The other driver was not insured. At the time of the accident, Boissonneault was insured under an Auto-Owners Insurance Company no-fault policy that provided underinsured motorist coverage in addition to uninsured motorist coverage. Underinsured motorist coverage extended to "bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured and arising out of the ownership, maintenance or use of an automobile with respect to which a bodily injury bond or insurance policy is applicable at the time of the accident but which provides lower limits of liability than those specified in the Declarations" of the Auto-Owners policy. Uninsured motorist coverage was limited to $50,000 per person and $100,000 per occurrence, and underinsured motorist coverage was subject to the same limits. Linda D. Boissonneault, personal representative of the decedent's estate, filed claims for $50,000 in uninsured motorist benefits and $50,000 in underinsured motorist benefits. Auto-Owners denied the claims and brought an action in the Saginaw Circuit Court for a declaration that payment under both coverages was not required. Plaintiff alleged that, under the terms of its policy, underinsured motorist coverage was merely an extension of uninsured motorist coverage and that its liability was therefore limited to $50,000. The trial court, Fred J. Borchard, J., granted summary disposition in favor of plaintiff. Defendant Linda D. Boissonneault appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Automobile Insurance §§ 298, 314, 322, 326, 351.

See the Index to Annotations under No-Fault Insurance; Passengers; Uninsured Motorists.

1. Ambiguity resulting from the interpretation of an insurance contract is to be liberally construed against the insurer and in favor of coverage. In this case, the Auto-Owners policy is ambiguous as to whether underinsured motorist coverage is distinct from or is an extension of uninsured motorist coverage. In view of the rule of construction described above and the fact that Auto-Owners charged separate premiums for, and made separate provisions in its policy for, uninsured and underinsured motorist coverage, the ambiguity in this case must be resolved in favor of defendant.

2. The "other insurance" limitation clause in Auto-Owners' policy with respect to the insured's bodily injury applies to any other automobile or general accident insurance policy providing coverage similar to that provided under the Auto-Owners policy. The clause does not serve to limit coverage under the uninsured and underinsured motorist provisions of the Auto-Owners policy.

Reversed and remanded for entry of an order of summary disposition in favor of defendant.

1. INSURANCE — JUDICIAL CONSTRUCTION.

Ambiguity resulting from the interpretation of an insurance contract is to be liberally construed against the insurer and in favor of coverage.

2. INSURANCE — NO-FAULT — UNINSURED MOTORISTS — UNDERINSURED MOTORISTS.

A no-fault automobile insurance policy providing for uninsured motorist coverage and underinsured motorist coverage "for bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured and arising out of the ownership, maintenance or use of an automobile with respect to which a bodily injury liability bond or insurance policy is applicable at the time of the accident but which provides lower limits of liability than those specified" under the injured insured's own policy is construed to provide for both uninsured and underinsured motorist benefits, subject to the limits of liability specified under each coverage, for the insured's injury or death resulting from one accident involving an uninsured motorist and an underinsured motorist where the policy's language is ambiguous as to whether underinsured motorist coverage is distinct from or is an extension of uninsured motorist coverage and separate premiums are charged for each coverage.

*O'Neill, Ackerman, Wallace & Doyle, P.C.* (by *James D. Henke*), for plaintiff.

*Mossner, Majoros & Alexander, P.C.* (by *William S. Pearson*), for defendant.

Before: REILLY, P.J., and CYNAR and T. M. BURNS,* JJ.

REILLY, P.J. Defendant appeals as of right from the trial court's grant of summary disposition to plaintiff. We reverse.

Defendant's decedent was killed while riding as a passenger in a car which was drag racing with another vehicle. Although the second vehicle was not involved in the fatal collision which caused the deaths of three persons and injury to a fourth, it is undisputed that the drivers of both cars negligently caused the accident. The driver of the car in which decedent was riding was underinsured, having policy limits of only $20,000 per person and $40,000 per occurrence, and the driver of the second car was uninsured. Defendant received $12,000 of the amount available under the policy issued to the first driver.

At the time of the accident, decedent was covered by an automobile insurance policy by plaintiff which provided for both uninsured and underinsured motorist coverage. The limits of each type of coverage were $50,000 per person and $100,000 per occurrence. It is undisputed that defendant paid a separate premium for each type of coverage. The provision in the policy for these two types of coverage (section D) was as follows:

> D. UNINSURED MOTORIST. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured,

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

arising out of the ownership, maintenance or use of such uninsured motor vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration.

UNDERINSURED MOTORIST COVERAGE. In consideration of the premium at which this policy is written, it is hereby agreed that Uninsured Motorist Coverage is extended to bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured and arising out of the ownership, maintenance or use of an automobile with respect to which a bodily injury liability bond or insurance policy is applicable at the time of the accident but which provides lower limits of liability than those specified in the Declarations hereof; provided that with respect to this extension, the Company's liability shall be limited to (1) the amount by which the limits stated in the Declarations hereof exceed the total limits of all bodily injury bonds or insurance policies applicable to the person or persons responsible for the damages, and (2) such damages are in excess of the total limits of all such bodily injury bonds or insurance policies.

All terms and conditions applicable to Uninsured Motorist Coverage are applicable to this extension.

The policy also contained a limitation clause relating to other insurance:

16. OTHER INSURANCE. . . . With respect to bodily injury under Coverage D, if the insured has other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable under this coverage for a greater proportion of such loss than the applicable

limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.

Following decedent's death, defendant filed a claim with plaintiff seeking maximum payments of $50,000 under both the uninsured and underinsured provisions of this policy. This claim was apparently denied. Thereafter, plaintiff filed the instant complaint seeking a declaration that payment under both coverages was not required. Plaintiff maintained that the underinsured coverage was merely an extension of uninsured coverage and was intended only to provide defendant with coverage in a broader range of circumstances, not with increased limits of liability. In support, plaintiff referred to the following clause:

Limits of Liability:
The limit of liability expressed in the declarations with respect to Coverages A and D as applicable to "each person" is the limit of the company's liability for all damages, including damages for expenses, care and loss of services, arising out of bodily injury to one person in any one occurrence; the limit of such liability expressed in the declaration as applicable to "each occurrence" is, subject to the above provisions respecting each person, a total limit of the company's liability for all damages, including damages for expenses, care and loss of services, arising out of bodily injury to two or more persons in one occurrence.

Thereafter, on plaintiff's motion, the trial court granted summary disposition to plaintiff pursuant to MCR 2.116(C)(9), failure to state a valid defense, and MCR 2.116(C)(10), no genuine issue as to any material fact. The trial court concluded:

In accordance with coverage D of the policy, the

Court is of the opinion that underinsurance bene-
fits are an extension of uninsured motorist cover-
age and that the same terms and conditions in
limits are to be applied. The uninsured motorist
coverage was limited to fifty thousand dollars
($50,000), therefore, the insurance company's lim-
its of liability is fifty thousand dollars ($50,000).

On appeal, defendant argues that the trial court
erred in granting summary disposition to plaintiff
because the two provisions of section D lead to a
reasonable expectation that coverage will be pro-
vided under both clauses simultaneously, particu-
larly where separate premiums are paid for each
coverage. Defendant maintains that the policy is
ambiguous as to whether the $50,000 per person
limit applies to each type of coverage separately or
to both types collectively, and that the trial court
therefore erred in interpreting the policy in favor
of the insurer. We agree.

Insurance contracts are to be interpreted by
reading them as a whole. *Allstate Ins Co v Miller,*
175 Mich App 515, 519; 438 NW2d 638 (1989). If
the contract can reasonably be understood in dif-
ferent ways, the ambiguity is to be liberally con-
strued against the insurer and in favor of cover-
age. *Id.,* citing *Raska v Farm Bureau Mutual Ins
Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440
(1982). Further, exclusionary clauses are to be
strictly construed against the insurer. *Id.*

In the instant case, our review of the policy
language contained in section D convinces us that
the clause is ambiguous as to the coverage issue.
Although the language clearly provides that un-
derinsured coverage is an "extension" of unin-
sured coverage, the term "extension" is not de-
fined. Further, there is nothing in the policy, or in
the record, to indicate that the use of the term

precludes simultaneous maximum coverage under both provisions.

To the contrary, the organization of section D creates the impression that such simultaneous coverage is possible. We note that the two paragraphs offering the respective coverages are not only distinct, but are also equally indented with identical bold print typeface in their headings. The impression of separate coverage is further enhanced by the insured's payment of separate premiums for each type of coverage. In addition, we note that, in a declaration sheet prepared by plaintiff following decedent's renewal of the policy, plaintiff not only listed the two types of coverage separately but also detailed that each coverage carried a limit of "$50,000 each person/ $100,000 each occasion."

Moreover, we do not find that this ambiguity is resolved by reference to the policy's limitation language. With respect to section 16, entitled "OTHER INSURANCE," we conclude that the limitation outlined therein does not refer only to uninsured coverage, as the starting point to determine what is "other similar insurance," but rather relates to the entire policy itself. Thus, the limitation would apply only if the insured could claim benefits under any other automobile or general accident insurance policy providing coverage similar to the coverage provided by the policy considered here. To hold that the "OTHER INSURANCE" clause precluded the insured from seeking benefits under other provisions of the same policy would be incongruous, particularly where separate, and presumably extra, premiums were paid for such additional coverage.

In any event, we do not find that uninsured and underinsured benefits are "similar insurance" within the meaning of the "OTHER INSURANCE"

clause. Plainly, underinsured benefits would not be applicable in situations involving only uninsured motorists, and uninsured benefits would be equally unavailable where the other motorist was merely underinsured. Thus, but for circumstances like those in the instant case, the two types of coverage are rarely applicable in tandem. Given that each provision is designed to apply in different situations, depending on the insured status of the negligent motorist, we do not find that they constitute "similar insurance."

Neither do we accept that the policy's "limits of liability" clause bars defendant's recovery of maximum benefits under both provisions. We note that this exclusion merely states that the plaintiff's liability as to each person is limited to those maximum benefits available under sections A and D. Since we have determined that section D is ambiguous as to what an insured's maximum benefits are in cases such as the instant one, we find that this exclusion is equally unclear.

Therefore, we conclude that the trial court erred in granting summary disposition to plaintiff. Having reviewed the record, we are persuaded that the policy at issue is ambiguous as to whether an insured may maintain simultaneous claims for maximum benefits under both the uninsured and underinsured motorist provisions. Consequently, defendant was entitled to have the disputed provisions interpreted in his favor. See *Miller, supra.* Although we agree with plaintiff that the instant defendant is thereby placed in a better position than other defendants whose decedents had identical insurance but who were not involved in accidents with *both* uninsured and underinsured motorists, we do not agree that such a result requires an interpretation of the policy in favor of the insurer. The remedy for such inequity, if any, is

not found in a declaratory action but rather in the redrafting of the policy.

Reversed. Remanded for entry of order granting summary disposition in favor of the defendant. MCR 2.116(C)(10).